# Exhibit 1

# An Act

ENROLLED HOUSE
BILL NO. 4429

By: Hilbert of the House

and

Daniels of the Senate

An Act relating to proxy advisory services; enacting the Proxy Advisor Transparency Act; making findings; defining terms; imposing certain duties on proxy advisors; requiring disclosure; prescribing methods of notification; excluding certain proxy advisory services with respect to financial interest testing; prescribing requirements of financial analysis; imposing duties with respect to certain services; defining term; providing violation of requirements as a deceptive trade practice; authorizing investigatory powers to the Attorney General; authorizing civil actions for declaratory judgment and injunctive relief; defining aggrieved person; providing for effect of enactment on certain pending claims; providing for noncodification; providing for codification; and providing an effective date.

SUBJECT: Proxy advisory services

BE IT ENACTED BY THE PEOPLE OF THE STATE OF OKLAHOMA:

SECTION 1. NEW LAW A new section of law not to be codified in the Oklahoma Statutes reads as follows:

This act shall be known and may be cited as the "Proxy Advisor Transparency Act".

SECTION 2. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1001 of Title 71, unless there is created a duplication in numbering, reads as follows:

The Legislature finds as follows:

1. When shareholders hire professionals to manage investments, they expect that the service will be performed in their financial interest;

2. There is a particular need for disclosures for proxy voting advice because that advice is often provided for hundreds or thousands of shareholder votes each year and based on lengthy policies that contain general statements but do not explain whether or how the policy provisions will maximize returns for investors for any particular company, or shareholder vote;

3. Proxy advisors in their benchmark policies have recommended votes based on environmental, social, or governance (ESG) investing; diversity, equity, or inclusion (DEI); and social credit and sustainability scores. Proxy advisors have not conducted financial analyses before making these recommendations, despite having proxy voting policies claiming that the purpose of the policy's recommendations is maximizing, increasing, or protecting shareholder value;

4. Requiring proxy advisors to provide clear, factual disclosures when they recommend casting a vote for a nonfinancial reason will prevent fraudulent or deceptive acts and practices in this state; and

5. A company that is the subject of a shareholder proposal often has information regarding whether the proposal is in the shareholder's financial interests or regarding the costs of the proposal, and notice of a proxy advisor's recommendation allows the company to provide additional responsive information to shareholders that may prevent fraudulent or deceptive practices associated with proxy advisors making recommendations for nonfinancial reasons. It is not practical for a company to prebut every possible basis for an erroneous proxy voting recommendation.

SECTION 3. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1002 of Title 71, unless there is created a duplication in numbering, reads as follows:

As used in this act:

1. "Affiliated group" means a group of one or more entities in which a controlling interest is owned by a common owner or owners, either corporate or noncorporate, or by one or more of the member entities;

2. "Charitable organization" means an organization that is exempt from federal income tax under Section 501(a), Internal Revenue Code of 1986, by being listed as an exempt organization under Section 501(c)(3) of that code;

3. "Company" means a publicly traded, for-profit corporation, limited liability company, partnership, or other business entity;

4. "Company proposal" means any proposal made by a company to its shareholders that is included in the company's proxy statement, including, but not limited to, a proposal relating to director nominations or elections, executive compensation, corporate transactions, corporate structure, auditor selection, or company policy on any subject;

5. "Default recommendation or policy" means a system, set of rules, principles, or guidelines designed to assist with voting decisions on any company proposals or proxy proposals;

6. "Proxy advisor" means a person who, for compensation, provides a proxy advisory service to shareholders of a company or to other persons with authority to vote on behalf of shareholders of a company;

7. "Proxy advisory service" means any of the following services that are provided in connection with or in relation to a company or are provided to any person in this state:

a. advice or a recommendation on how to vote on a proxy proposal or company proposal,

b. proxy statement research and analysis regarding a proxy proposal or company proposal,

c. a rating or research regarding corporate governance at one or more companies,

d. development of proxy voting recommendations or policies, including establishing default recommendations or policies, and

e. the term "proxy advisory service" shall not include a charitable organization if:

(1) the organization's gross annual revenue from proxy advisory services is less than Two Hundred Fifty Thousand Dollars ($250,000.00), and

(2) if applicable, each affiliated group of the organization has combined gross annual revenue from proxy advisory services that is less than Two Hundred Fifty Thousand Dollars ($250,000.00);

8. "Proxy proposal" means any proposal made by a shareholder of a company that is included in the company's proxy statement, including, but not limited to, a proposal relating to any of the subjects that could be covered by a company proposal;

9. "Shareholder" includes a shareholder, unitholder, limited partner, or other equity owner of a company; and

10. "Written financial analysis" means a written document that:

a. analyzes the expected short-term and long-term financial benefits and costs to the company of implementing a company proposal or proxy proposal,

b. concludes what vote or course of action is most likely to positively affect shareholder value, and

c. explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation.

SECTION 4. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1003 of Title 71, unless there is created a duplication in numbering, reads as follows:

A. If a proxy advisor makes a recommendation against company management on a company proposal or proxy proposal, or makes a default recommendation or policy involving votes against company management on company proposals or proxy proposals, and the proxy advisor does not do so based on a written financial analysis, the proxy advisor shall:

1. Concurrently with providing the proxy advisory service, include a conspicuous disclosure to each shareholder or entity or other person acting on behalf of a shareholder receiving the proxy advisory service that:

a. identifies the service being provided,

b. identifies the recommendation or policy at issue, and

c. states that the proxy advisor has made the recommendation or policy without doing so based on a written financial analysis regarding the impact of that recommended action on company investors that:

(1) analyzes the expected short-term and long-term financial benefits and costs to the company of implementing the company proposal or proxy proposal,

(2) concludes what vote or course of action is most likely to positively affect shareholder value, and

(3) explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation;

2. For a proxy advisory service covered by subparagraphs a through c of paragraph 7 of Section 3 of this act, concurrently with providing the proxy advisory service, send by electronic means and U.S. mail a copy of the disclosure under paragraph 1 of this subsection to the board of directors of each company that is the subject of the service; and

3. While such services are being provided, publicly and conspicuously disclose on the home or front page of the proxy advisor's website a statement that the advisor's proxy advisory services include one or more services that include recommendations or policies against company management on company proposals or proxy proposals that are not made based on a written financial analysis regarding the impact of that recommended action on company investors that:

a. analyzes the expected short-term and long-term financial benefits and costs to the company of implementing the company proposal or proxy proposal,

b. concludes what vote or course of action is most likely to positively affect shareholder value, and

c. explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation.

B. If a proxy advisor makes a recommendation against company management on a company proposal or proxy proposal, or makes a default recommendation or policy involving votes against company management on company proposals or proxy proposals, and the proxy advisor does so based on a written financial analysis, the proxy advisor shall:

1. Concurrently with providing the proxy advisory service, include a clear and conspicuous disclosure to each shareholder, or entity or other person acting on behalf of a shareholder, receiving the proxy advisory service that:

a. identifies the service being provided,

b. identifies the recommendation or policy at issue,

c. states that the proxy advisor has made the recommendation or policy based on a written financial analysis that:

(1) analyzes the expected short-term and long-term financial benefits and costs to the company of implementing the company proposal or proxy proposal,

(2) concludes what vote or course of action is most likely to positively affect shareholder value, and

(3) explains the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation, and

d. states that the analysis is available upon request;

2. Make such analysis available within a reasonable time to any recipient of the proxy advisory service upon request; and

3. For a proxy advisory service covered by subparagraphs a through c of paragraph 7 of Section 3 of this act, concurrently with providing the proxy advisory service, provide a copy of such analysis to the board of directors of each company that is the subject of the service.

SECTION 5. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1004 of Title 71, unless there is created a duplication in numbering, reads as follows:

A. A violation of this act is a deceptive trade practice under applicable state law and is actionable under the enforcement provisions of that statute. The Attorney General may exercise all investigative powers under any applicable law related to deceptive practices if the Attorney General has reason to believe a violation has occurred, is occurring, or is about to occur.

B. In addition to enforcement under subsection A of this section, any person aggrieved by a violation of this act may bring an action seeking a declaratory judgment or injunctive relief against a proxy advisor who violates this act. Not later than the seventh day after the date on which an action is brought under this subsection, the plaintiff shall provide written notice to the Attorney General, who has a right to intervene in the action. For purposes of this subsection, an aggrieved person includes:

1. A recipient of proxy advisory services provided by the proxy advisor;

2. A company that is the subject of proxy advisory services covered by subparagraphs a through c of paragraph 7 of Section 3 of this act provided by the proxy advisor; and

3. Any shareholder, unitholder, limited partner, or other equity owner of a company covered by paragraph 2 of this subsection.

SECTION 6. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 1005 of Title 71, unless there is created a duplication in numbering, reads as follows:

Nothing in this act eliminates any claim under any applicable law governing deceptive practices, regardless of whether that claim accrues before or after the effective date of this act.

SECTION 7. This act shall become effective November 1, 2026.

Passed the House of Representatives the 25th day of March, 2026.

______________________________
Presiding Officer of the House of Representatives

Passed the Senate the 28th day of April, 2026.

______________________________
Presiding Officer of the Senate

OFFICE OF THE GOVERNOR

Received by the Office of the Governor this ____________________ day of ___________________, 20_______, at _______ o'clock _______ M.

By: _________________________________

Approved by the Governor of the State of Oklahoma this _________ day of ___________________, 20_______, at _______ o'clock _______ M.

_________________________________
Governor of the State of Oklahoma

OFFICE OF THE SECRETARY OF STATE

Received by the Office of the Secretary of State this __________ day of ___________________, 20_______, at _______ o'clock _______ M.

By: _________________________________