**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

INSTITUTIONAL SHAREHOLDER SERVICES INC.,

*Plaintiff*,

v.

GENTNER DRUMMOND, in his official capacity as the Oklahoma Attorney General,

*Defendant*.

Case No. 5:26-cv-02111-PRW

The Hon. Patrick R. Wyrick

ORAL ARGUMENT REQUESTED

**PLAINTIFF INSTITUTIONAL SHAREHOLDER SERVICES INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. The State Has Not Shown That H.B. 4429 Is Constitutional ........ 1

A. H.B. 4429 Violates ISS' First Amendment Rights ........ 1

1. H.B. 4429's Viewpoint Discrimination Fails Strict Scrutiny ........ 1

2. There Is No First Amendment Carve-Out For Securities Laws ........ 4

3. The State Cannot Show A Commercial-Speech Exception Applies ........ 6

B. H.B. 4429 Is Unconstitutionally Vague As Applied To ISS ........ 8

C. H.B. 4429 Is Impermissibly Extraterritorial ........ 10

II. The Remaining Factors Favor ISS And Severability Is Unwarranted ........ 10

CONCLUSION ........ 10

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

**CASES:**


*All. of Health Care Sharing Ministries v. Conway*,
No. 1:24-cv-01386, 2025 WL 315389 (D. Colo. Jan. 13, 2025) .................................. 6

*Am. Meat Inst. v. Dep't of Agric.*,
760 F.3d 18 (D.C. Cir. 2014) (en banc) ........................................................................ 7

*Animal Legal Defense Fund v. Kelly*,
9 F.4th 1219 (10th Cir. 2021) ........................................................................................ 2

*Belle Maer Harbor v. Charter Township of Harrison*,
170 F.3d 553 (6th Cir. 2019) ......................................................................................... 9

*Chiles v. Salazar*,
607 U.S. 627 (2026) ....................................................................................................... 5

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*,
596 U.S. 61 (2022) ................................................................................................... 3, 4

*Crookshanks ex rel. C.C. v. Elizabeth Sch. Dist.*,
No. 1:24-cv-03512, 2025 WL 1000774 (D. Colo. Apr. 3, 2025) ................................. 1

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) ....................................................................................................... 5

*Edenfield v. Fane*,
507 U.S. 761 (1993) ....................................................................................................... 8

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ..................................................................................................... 10

*Ent. Software Ass'n v. Blagojevich*,
469 F.3d 641 (7th Cir. 2006) ......................................................................................... 7

*Free the Nipple-Fort Collins v. City of Fort Collins*,
916 F.3d 792 (10th Cir. 2019) ....................................................................................... 1

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul.*,
512 U.S. 136 (1994) ....................................................................................................... 7

**TABLE OF AUTHORITIES—Continued**

Page(s)

*ISS v. Kobach*,
No. 2:26-cv-02254, 2026 WL 1815236 (D. Kan. June 24, 2026) ........................ *passim*

*ISS v. Rokita*,
No. 1:26-cv-00717, __ F. Supp. 3d ___, 2026 WL 1847882 (S.D. Ind. June 26, 2026) ........................ 2, 7, 8

*ISS v. SEC*,
142 F.4th 757 (D.C. Cir. 2025) ........................ 5

*Keenan v. Russ*,
588 P.3d 156 (Okla. 2025) ........................ 10

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ........................ 6

*Matal v. Tam*,
582 U.S. 218 (2017) ........................ 2

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ........................ 5

*Nat'l Ass'n of Mfrs. v. SEC*,
748 F.3d 359 (D.C. Cir. 2014) ........................ 5

*Nat'l Ass'n of Mfrs. v. SEC*,
800 F.3d 518 (D.C. Cir. 2015) ........................ 5, 7

*Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra*,
585 U.S. 755 (2018) ........................ 6, 7, 8

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) ........................ 10

*Ohralik v. Ohio State Bar Ass'n*,
436 U.S. 447 (1978) ........................ 5

*Paris Adult Theatre I v. Slaton*,
413 U.S. 49 (1973) ........................ 5

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988) ........................ 6

## TABLE OF AUTHORITIES—Continued

Page(s)

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) .......... 2

*SEC v. AT&T, Inc.*,
626 F. Supp. 3d 703 (S.D.N.Y. 2022) .......... 5

*SEC v. Tex. Gulf Sulphur Co.*,
401 F.2d 833 (2d Cir. 1968) (en banc) .......... 5

*SEC v. Wall St. Publ'g Inst., Inc.*,
851 F.2d 365 (D.C. Cir. 1988) .......... 5

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .......... 1

*Space Expl. Techs. Corp. v. NLRB*,
151 F.4th 761 (5th Cir. 2025) .......... 10

*United States v. Stevens*,
559 U.S. 460 (2010) .......... 9

*United States v. Wenger*,
427 F.3d 840 (10th Cir. 2005) .......... 4, 6

*Utah Pol. Watch, Inc. v. Musselman*,
179 F.4th 1241 (10th Cir. 2026) .......... 2

*Zauderer v. Office of Disciplinary Counsel*,
471 U.S. 626 (1985) .......... 6

**REGULATIONS:**

17 C.F.R. § 240.14a-6(a) .......... 3, 4

17 C.F.R. § 240.14a-12(c) .......... 4

17 C.F.R. § 240.14a-101, Items 4(b), 5(b) .......... 4

57 Fed. Reg. 48,276 (Oct. 22, 1992) .......... 6

**LEGISLATIVE MATERIAL:**

Texas S.B. 2337 (2025) .......... 2

## INTRODUCTION

The State's Opposition concedes much and simplifies this case. The State does not engage with ISS' exhibits or introduce any of its own. The State either does not dispute or affirmatively waives key planks of the First Amendment analysis, including that H.B. 4429 cannot survive strict scrutiny. *Cf. Crookshanks ex rel. C.C. v. Elizabeth Sch. Dist.*, No. 1:24-cv-03512, 2025 WL 1000774, at *5 (D. Colo. Apr. 3, 2025) (defendant forfeits issue when it "fails to respond" to a "substantive argument" in "Plaintiff's preliminary injunction motion"). And the State's silence about how ISS risks imprisonment for violating H.B. 4429 only clarifies the stakes.

## ARGUMENT

The State opens with two misconceptions. The State invokes (at 8) the heightened preliminary-injunction standard, but that does not apply in cases where, as here, the government "may fully enforce" the law if the plaintiff loses after trial. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019). The State also suggests that it does not bear the burden of proving H.B. 4429's constitutionality. But it is undisputed that "H.B. 4429 burdens protected speech," Opp. 8; *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("creation and dissemination of information are [protected] speech"), which, as the State agrees (at 8), shifts the burden to the State.

### I. The State Has Not Shown That H.B. 4429 Is Constitutional.

#### A. H.B. 4429 Violates ISS' First Amendment Rights.

##### 1. H.B. 4429's Viewpoint Discrimination Fails Strict Scrutiny.

Viewpoint discrimination triggers strict scrutiny. The State blusters (at 11) that,

unlike Indiana and Kansas, it does not concede H.B. 4429 fails strict scrutiny. The State may say that it "makes no such concession," *id.*, but it never actually argues that H.B. 4429 survives strict scrutiny. Whether by concession or waiver, the result is the same: This Court's inquiry can begin and end with viewpoint discrimination. *ISS v. Kobach*, No. 2:26-cv-02254, 2026 WL 1815236, at *8 (D. Kan. June 24, 2026).

The State ignores ISS' viewpoint-discrimination cases, including *Animal Legal Defense Fund v. Kelly*, 9 F.4th 1219 (10th Cir. 2021). The State says (at 9-10) that H.B. 4429 is neutral because it "addresses no particular message"; for example, it "would be triggered by 'anti-ESG' proxy advisors and 'pro-ESG' advisors alike." That gambit fails for the same reason it failed in Kansas and Indiana[1]: It "misstates the relevant viewpoint." *ISS v. Rokita*, No. 1:26-cv-00717, __ F. Supp. 3d ___, 2026 WL 1847882, at *6 (S.D. Ind. June 26, 2026). The relevant category is not advice on a "particular subject" like ESG. Opp. 10. It is advice "on *all issues*." *Rokita*, 2026 WL 1847882, at *6. In that category, H.B. 4429 very much picks a side: management's. *Kobach*, 2026 WL 1815236, at *8.

That is viewpoint discrimination, which "covers more than an individual's ideology or ideas on a particular subject matter." *Utah Pol. Watch, Inc. v. Musselman*, 179 F.4th 1241, 1257 (10th Cir. 2026). Under this "broad" understanding, a law can discriminate on viewpoint even when it applies "evenhandedly" to "those arrayed on both sides" of an issue. *Matal v. Tam*, 582 U.S. 218, 243 (2017) (plurality op.); *see Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 831 (1995) (disfavoring "a perspective[ or]

[1] The Texas law also singles out recommendations to vote against management's position. *See* Texas S.B. 2337 (2025) §§ 6A.101(a)(2), (4), 6A.102; *contra* Opp. 10.

standpoint from which a variety of subjects may be discussed and considered" is "viewpoint discrimination"). Thus, "[t]he fact that [H.B. 4429] doesn't drill down . . . on why a particular voting recommendation goes against company management does not make the statute any less viewpoint-based on its face." *Kobach*, 2026 WL 1815236, at *8.

The State contends (at 9) that H.B. 4429 "simply defers to those with the most information about the company." But there is no evidence that companies perform their own analyses of the kind contemplated by H.B. 4429, *see* Goldstein Decl. ¶ 47; boards often oppose shareholder proposals for entirely conclusory reasons, *e.g.*, Ex. 10 at 43-44 (opposing proposal because Amazon "is a leader in the responsible development [and] use of AI"); Ex. 11 at 39 (Exxon's opposition because the "proponent is an anti-oil and gas activist"). And boards are "directly self-interested" in vote outcomes, including on issues like executive pay and limits on their liability, whereas "proxy advisors provide a neutral point of analysis" without "any direct financial interest" in "the outcome of the votes." Ex. 24 at 15. The State's response also spotlights H.B. 4429's selective targeting of proxy advisors among those that advise shareholders. PI 9-10. In any case, "defer[ring]" to management, Opp. 9, is just another way of saying H.B. 4429 plays favorites. PI 16.

The State concludes that "disagreement with management" is "a neutral reference point." Opp. 11 (citing *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022)). But "disagreement" is decidedly not a neutral consideration like the "location" of a sign. *Contra City of Austin*, 596 U.S. at 71; *see* PI 8-9; *Kobach*, 2026 WL 1815236, at *7 n.9. The "federal proxy rules" do not suggest otherwise. Opp. 11. The State cites a timing requirement for companies and solicitors in contested elections. 17 C.F.R.

§ 240.14a-6(a).[2] H.B. 4429 is not akin to requiring advance notice of voting options in contested elections. The law applies *only* when ISS advises against what management wants; if ISS takes management's side against a shareholder's proposal, the law requires nothing. The burdens turn entirely on the "communicative content" of ISS' speech. *City of Austin*, 596 U.S. at 69 (citation omitted). And the State tellingly does not explain how the law's animus towards advice based on "ESG" and "DEI," § 2(3), is neutral. PI 10-11.

### 2. There Is No First Amendment Carve-Out For Securities Laws.

The State's claim (at 11) that speech "related to securities" warrants less than strict scrutiny contradicts precedent that "advice" and "analysis of the securities markets" is entitled to "full First Amendment protection," *United States v. Wenger*, 427 F.3d 840, 847-848 (10th Cir. 2005). A lower standard may apply only if the law regulates "commercial speech," in which case the "disclosures [are] scrutinized as would any limitation on commercial speech." *Id.* at 845, 848. It is thus not the "wrong question" to ask if the regulated speech is "advertis[ing]," *contra* Opp. 11; whether speech is "commercial" *depends on* if the speech "is primarily akin to commercial advertising," *Wenger*, 427 F.3d at 847. "[S]peech about securities" is no exception. *Kobach*, 2026 WL 1815236, at *10.

---

[2] The State cites a provision (at 11) requiring a preliminary proxy statement be filed with the SEC before final copies are sent to shareholders, including where there is a "solicitation in opposition," 17 C.F.R. § 240.14a-6(a)—that is, in contested elections. In contested elections, issuers and "solicit[ors] in opposition" are treated the same: both must provide advance notice. There is no "pro-" or "anti-management" content preference. The State also refers to rules for solicitations "opposing a solicitation," *id.* § 240.14a-12(c), *see id.* § 240.14a-101, Items 4(b), 5(b), but those also apply equally and require information be disclosed in contested elections. No rule requires anyone to specially justify the bases for their position—let alone only one side of the debate—as H.B. 4429 does.

The State's cases (at 11-14) are also unhelpful on their own terms. None concerned viewpoint discrimination. Several involve pre-*Zauderer* dicta about what "sellers of securities may write or publish about their wares." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 64 (1973).[3] Others involve regulations of "inherently misleading" speech "to sell securities." *Nat'l Ass'n of Mfrs. v. SEC*, 748 F.3d 359, 372 (D.C. Cir. 2014) (*NAM I*) (distinguishing *SEC v. Wall St. Publ'g Inst., Inc.*, 851 F.2d 365, 371, 373 (D.C. Cir. 1988), and emphasizing that laws do "not face relaxed review just because [the government] used the 'securities' label"), *adhered to on reh'g in relevant part*, 800 F.3d 518 (D.C. Cir. 2015) (*NAM II*).[4] These cases are inapposite; ISS does not issue, buy, sell, advertise, or trade securities. Ex. 13 at 11. And ISS "does not 'solicit' " proxy votes; ISS "merely advise[s] others how to vote" based on their chosen policies after assessing public information. *ISS v. SEC*, 142 F.4th 757, 761, 767 (D.C. Cir. 2025); *see* Goldstein Decl. ¶¶ 17, 33, 44.

Exceptions to strict scrutiny are "few and narrowly drawn, and all share a long and well-recognized historical pedigree," *Chiles v. Salazar*, 607 U.S. 627, 641 (2026), yet the State has identified *no* tradition of regulating proxy advisors' speech. A supposed tradition

---

[3] *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758 n.5 (1985) (plurality op.), referred in dicta to *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978), which referred in dicta to "the exchange of information about securities" involving a case about insider trading rules, *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 839 (2d Cir. 1968) (en banc), and to "corporate proxy statements" involving a case about prohibitions on false or misleading proxy solicitations, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 377, 381-382 (1970). Neither *Texas Gulf* nor *Mills* referenced the First Amendment.

[4] *SEC v. AT&T, Inc.*, 626 F. Supp. 3d 703 (S.D.N.Y. 2022), involved an SEC rule barring issuers from "selectively disclosing material nonpublic information" for "the same reasons as . . . insider trading": to ensure that "a privileged few" would not "gain an informational edge . . . to profit . . . from their superior access to corporate insiders," *id.* at 710, 751.

of regulating "*issuers* of registered securities," *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024) (emphasis added), *see* Opp. 18-19, does not permit regulations of proxy advisors.[5] Indeed, the SEC has long refused to regulate speech "among shareholders, their advisors and other parties on matters subject to a vote," which "certainly would raise serious questions under the free speech clause of the First Amendment." 57 Fed. Reg. 48,276, 48,278-79 (Oct. 22, 1992).

**3. The State Cannot Show A Commercial-Speech Exception Applies.**

The State admits (at 18) H.B. 4429 "compels" speech; even aside from viewpoint discrimination, strict scrutiny applies absent a narrow commercial-speech exception. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988). But the State does not address and so waives any argument that H.B. 4429 regulates commercial speech. PI 18-19. The State's remaining arguments thus necessarily fail; "no lesser standard applies because the speech at issue is not commercial." *Kobach*, 2026 WL 1815236, at *10.

Even skipping that threshold defect, the State has not shown that the test in *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), applies. *Zauderer* is limited to advertising, *see Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra*, 585 U.S. 755, 771 (2018), or speech "akin to commercial advertising," *Wenger*, 427 F.3d at 847, like point-of-sale product labeling. Yet it is undisputed that the speech here is not advertising. PI 18. The State is wrong to say that H.B. 4429's warnings are "purely factual and

---

[5] The State also cites (at 13) dicta in *Alliance of Health Care Sharing Ministries v. Conway*, No. 1:24-cv-01386, 2025 WL 315389 (D. Colo. Jan. 13, 2025), *on appeal*, No. 25-1035 (10th Cir.); the case did not involve securities, did not cite *Wenger*, and predated *Chiles*.

uncontroversial," Opp. 15, 16; the warnings brand ISS "with a scarlet letter," *Rokita*, 2026 WL 1847882, at *4, and compel ISS to turn over its analyses and confidential client information to company management, § 4(A)(1)(a)-(b), (2), (B)(3). It makes no difference that H.B. 4429 "refer[s] to a statutory definition" of "financial analysis," Opp. 17, which is an opinion-based definition "unlike a surgeon general's warning of the carcinogenic properties of cigarettes," *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006); *see* Opp. 16, that, therefore, "cannot save" the law, *NAM II*, 800 F.3d at 529-530.[6]

Nor has the State shown H.B. 4429 survives *Zauderer*. Despite the State's claims, the "*Zauderer* fit requirements are far more stringent than mere rational basis review," *Am. Meat Inst. v. Dep't of Agric.*, 760 F.3d 18, 33 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring in the judgment); *contra* Opp. 14, and *NIFLA* sets the governing standard, *see* 585 U.S. at 776-778; *contra* Opp. 16. A consumer-protection interest is "unjustified" where, as here, the State "points to nothing" supporting it. *NIFLA*, 585 U.S. at 777-778 & n.4; *see Ibanez v. Fla. Dep't of Bus. & Pro. Regul.*, 512 U.S. 136, 147 (1994) (government must "back up its alleged concern"). The State's contention (at 4) that "proxy advisors have prioritized their own social policy goals over the financial returns of their clients" is baseless; indeed, it is undisputed that ISS "applies the policy that its client selects." *Rokita*, 2026 WL 1847882, at *3; *see* PI 4. And the State produces no evidence that clients think ISS promises to "maximiz[e] returns," Opp. 5, where ISS explicitly disclaims exactly that,

---

[6] It is also unclear what meets the State's shifting definition of "written financial analysis." *Infra* p. 9. And while the State says it "does not mandate the form" of warnings, Opp. 15, the law sets out a series of statements ISS must recite "conspicuous[ly]," *e.g.*, § 4(A)(1), and compels information to boards "by electronic means and U.S. mail," § 4(A)(2).

PI 4; Ex. 13 at 11. The State offers no argument on tailoring. PI 20. That ISS may attribute the forced warnings to Oklahoma does not lessen the burden on ISS, *contra* Opp. 15; reciting the 94 words in § 4(A)(1)(c) would be more than three times longer than the "29-word statement from the government" *NIFLA* rejected as burdensome, 585 U.S. at 778.

Finally, the State is wrong (at 17) to treat intermediate scrutiny as a backstop "if *Zauderer* did not apply": All roads lead to strict scrutiny. PI 20. Regardless, the State fails to carry its burden. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). The State contends (at 17-18) that H.B. 4429 targets misleading speech, but the State does not dispute it lacks any evidence that sophisticated institutional investor clients are misled when ISS provides detailed reports that apply criteria the clients have either selected or designed. PI 15-16, 20. The State likewise touts an "abstract" interest in preventing consumer deception, but the State does not even try to "demonstrate that the harms it recites are real and that [H.B. 4429] will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770-771; *see Rokita*, 2026 WL 1847882, at *9. And the State's perfunctory tailoring argument fails for the same reason H.B. 4429 fails *Zauderer*. *See supra* p. 7; PI 20.

**B. H.B. 4429 Is Unconstitutionally Vague As Applied To ISS.**

The State does not dispute the "stringent" vagueness test applies. PI 21. And while the State answers some questions about how the law applies, it ignores others. ISS' record citations show these questions are not "hypothetical." Opp. 19. The State says the law is limited to Oklahoma clients and "advice concerning Oklahoma companies," Opp. 22, without explaining what "concerning" means, PI 22, or when a company is an "Oklahoma company"—if it must be incorporated or headquartered there, or something else.

H.B. 4429's definition of "written financial analysis" is hardly "clear" when Indiana interprets identical language differently. *Contra* Opp. 20; *see* PI 22 n.10. And while the State insists that short- and long-term "[f]inancial benefits and costs" to a company "cannot 'differ between investors,'" Opp. 20, the State gives no objective definition. The State also says that ISS "does not prepare, and cannot prepare, the written financial analysis the Act describes," Opp. 2, but Kansas has said that at least some ISS advice meets Kansas's identical standard,[7] and Oklahoma now says a simple statement that "the benefits cannot be quantified, or [that] shareholder benefit is ambiguous or indeterminate" suffices. Opp. 20-21. Not only is that watered-down language missing from the statute, but, if included, it would make nearly all ISS' advice "based on a written financial analysis" purely because ISS is not in a position to know all of a company's costs. PI 11-12 & n.2.[8]

As for arbitrariness, that does not turn on whatever enforcement the State claims is "practicable," *contra* Opp. 21, especially when prison is on the table. Courts may "not uphold an unconstitutional statute merely because the Government promised to use it responsibly"; the Constitution "does not leave [regulated parties] at the mercy of *noblesse oblige*." *United States v. Stevens*, 559 U.S. 460, 480 (2010).

---

[7] Hr'g Tr. 30, *ISS v. Kobach*, No. 2:26-cv-02254 (D. Kan. Jun. 21, 2026), Dkt. 46 (advice "regarding Elon Musk['s] stock compensation plan contained every element of written financial analysis except disclosure of the personnel who prepared it and where they live").

[8] The State's other arguments (at 21) are easily dispatched: The State does not define "conspicuous"; does not specify if a single at-the-end-of-the-report warning "identifies the recommendation . . . at issue," § 4(A)(1)(b); does not say how much confidential client information ISS must turn over to management; and overlooks that a law turning on "reasonableness" is vague when it "fail[s] to include a definition of 'reasonable,'" *Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553, 558-559 (6th Cir. 2019).

### C. H.B. 4429 Is Impermissibly Extraterritorial.

The State does not dispute that the Due Process Clause and the Constitution's horizontal separation of powers prevent states from directly regulating beyond their borders, and the State's argument (at 22) that the dormant Commerce Clause does not do the same ignores *Edgar v. MITE Corp.*, 457 U.S. 624, 640-643 (1982) (plurality op.), which the Supreme Court preserved in *National Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023). The State instead argues that H.B. 4429 does not regulate activities "wholly beyond" Oklahoma because, according to the State (at 22), the law applies only when ISS gives advice "about Oklahoma companies and for Oklahoma clients." Even if this Court adopts that cryptic interpretation, *but see* Compl. ¶ 81; that only frames, rather than solves, the problem. Even on the State's telling, H.B. 4429 still requires ISS to give warnings out of state, PI 24—compelled speech that would not occur in Oklahoma.

## II. The Remaining Factors Favor ISS And Severability Is Unwarranted.

The State's arguments as to the other factors (at 23) fail because they assume H.B. 4429 is constitutional. The State's bid for severance (at 23-24) fares no better. Even if severance were not "premature" now, *see Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 773 (5th Cir. 2025), the entire law is triggered by viewpoint discrimination, *Kobach*, 2026 WL 1815236, at *9. The State is mum as to how severing that trigger, or any other part, is possible and would not fundamentally change the law such that the Legislature still would have enacted it. *E.g.*, *Keenan v. Russ*, 588 P.3d 156, 175-176 (Okla. 2025).

## CONCLUSION

This Court should grant the Preliminary Injunction.

Respectfully submitted,

/s/ David M. Foster

JESSICA L. ELLSWORTH*
jessica.ellsworth@hlc.com
DAVID M. FOSTER*
david.foster@hlc.com
MICHAEL J. WEST*
michael.west@hlc.com
DANA A. RAPHAEL*
dana.raphael@hlc.com
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600

ROBERT G. MCCAMPBELL
Oklahoma Bar No. 10390
rmccampbell@gablelaw.com
NICHOLAS V. MERKLEY
Oklahoma Bar No. 20284
nmerkley@gablelaw.com
GABLEGOTWALS
499 Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
(405) 235-5500

BRUCE D. OAKLEY*
bruce.oakley@hlc.com
HOGAN LOVELLS CADWALADER US LLP
609 Main Street, Suite 4200
Houston, TX 77002
(713) 632-1420

* admitted pro hac vice

*Counsel for Plaintiff Institutional Shareholder Services Inc.*

September 23, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ David M. Foster
David M. Foster